```
1  LAWRENCE G. BROWN
   Acting United States Attorney
2  BENJAMIN B. WAGNER
   SEAN C. FLYNN
3  Assistant U.S. Attorneys
   501 "I" Street, Suite 10-100
4  Sacramento, California 95814
   Telephone: (916) 554-2700
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. |
| ) | |
| v. ) | |
| ) | PLEA AGREEMENT PURSUANT TO |
| JAMES RICHARD WAHL, JR., ) | FED. R. CRIM. P. 11(c)(1)(C) |
| ) | |
| Defendant. ) | |

## I.

## INTRODUCTION

**A. Scope of Agreement:** The Information to be filed in this case charges the defendant, James Richard Wahl, Jr. ("Wahl"), with two counts of honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting,

1

administrative, or regulatory authorities.

**B. Rule 11(c)(1)(C) Specific Sentence Agreement:** The government and the defendant agree that a specific sentence, set forth below in paragraph VI(C), would be appropriate in this case (before any reduction for cooperation). Consequently, this plea agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Under the provisions of Rule 11(c)(3), the Court may accept or reject the plea agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the Court accepts the plea agreement, the Court will inform the defendant that it will embody in the judgment and sentence the disposition provided for in this plea agreement. If the Court rejects the plea agreement, the Court shall so advise the defendant, allow the defendant the opportunity to withdraw his plea, and advise him that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this plea agreement.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Waiver of Indictment and Venue:** The defendant will waive indictment by grand jury, waive venue in the Northern District of Texas, and agree to proceed in the Eastern District of California. He consents to the filing of a two-count Information, substantially in the form attached hereto as <u>Exhibit B</u>, charging him with honest services mail fraud (2 counts) in violation of 18 U.S.C. §§ 1341 and 1346.

**B. Guilty Plea:** The defendant will plead guilty to the

Information charging him with two counts of honest services mail fraud. The defendant agrees that he is in fact guilty of those charges and that the facts set forth in the Factual Basis attached hereto as Exhibit A are true and accurate.

**C. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. If such restitution is ordered, payment should be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**D. Agreement to Cooperate:** The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

If the defendant commits any crimes or if any of the defendant's statements or testimony prove to be knowingly false, misleading, or materially incomplete, or if the defendant otherwise violates this plea agreement in any way, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. The determination whether the defendant has violated the plea agreement will be under a probable cause standard. If the defendant violates the plea agreement, he shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to perjury, false statements, and obstruction of justice. Because disclosures pursuant to this plea agreement will constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant. Moreover, any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this plea agreement.

If it is determined that the defendant has violated any provision of this plea agreement or if the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to the government or other designated law enforcement

agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**E. Special Assessment:** The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.

## III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Sentencing Recommendations:**

**1. Incarceration Range:** The government will recommend that the defendant be sentenced to the bottom of the applicable sentencing guideline range as stipulated to by the parties in Section VI of this plea agreement.

**2. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move

under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer and the Court, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

    **3. Reduction of Sentence for Cooperation:** The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 15% if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must comply with paragraph II(D) of this plea agreement. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance. The defendant understands that the government may recommend a reduction in his sentence of less than 15% or no reduction at all, depending on the level of assistance the government determines that the defendant has provided. The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event the government declines to make a 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw his plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

6

1    If the government determines that the defendant has provided
2    further cooperation within one year following sentencing, the
3    government may move for a further reduction of his sentence pursuant
4    to Rule 35 of the Federal Rules of Criminal Procedure.

**B. Limitation on Use of Information for Sentencing:** Other than as set forth above, the government agrees that any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable guideline range in his case, pursuant to U.S.S.G. § 1B1.8.

## IV.

## ELEMENTS OF THE OFFENSE

With respect to Counts One and Two of the Information to be filed in this matter, which charge the defendant with honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, at trial the government would have to prove beyond a reasonable doubt the following elements:

First, that the defendant knowingly made up a material scheme or plan to deprive his employer Frito-Lay, Inc. of its intangible right to the defendant's honest services;

Second, the defendant acted with the intent to deprive Frito-Lay, Inc. of its intangible right to the defendant's honest services; and

Third, the defendant used, or caused to someone to use, the mails to carry out or to attempt to carry out the scheme or plan.

## V.

## MAXIMUM SENTENCE

**A. Maximum Penalty:** With respect to Counts One and Two of the Information to be filed in this matter charging violations of 18

U.S.C. §§ 1341 and 1346, the maximum sentence that the Court can impose is twenty years of incarceration, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100 on each count.

**B. Violations of Supervised Release**: The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority**: The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

8

impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculations:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate and agree to the following:

**1. Base Offense Level:** The defendant's base offense level is eight pursuant to U.S.S.G. § 2B4.1.

**2. Specific Offense Characteristics:** Pursuant to U.S.S.G. §§ 2B4.1(b)(1) and 2B1.1(b)(1)(F), the parties agree that at an evidentiary hearing the government is currently in a position to prove that the amount of loss attributable to the honest services mail fraud committed by the defendant, and relevant conduct, is greater than $120,000, but less than $200,000. Consequently, the base offense level is increased by ten.

**3. Abuse of Trust:** The parties stipulate and agree that in committing the conduct alleged in Counts One and Two of the Information to be filed in this matter defendant abused a position of public or private trust. Consequently, there is a two level enhancement pursuant to U.S.S.G. § 3B1.3.

**4. Acceptance of Responsibility:** See paragraph III(A)(2) above.

**5. Total Offense Level:** Pursuant to the foregoing stipulations, and assuming the defendant accepts responsibility for his conduct under U.S.S.G. § 3E1.1, the defendant's total adjusted offense level is seventeen.

**6. Criminal History:** The parties agree that the defendant's criminal history is to be determined by United States

9

1  Probation.

2  **7. Departures or Other Enhancements or Reductions:** The
3  parties stipulate and agree that they will not seek or argue in
4  support of any other specific offense characteristics, Chapter Three
5  adjustments, or cross-references other than those contemplated in
6  the foregoing stipulations. Other than a motion by the government
7  for a reduction in sentence pursuant to U.S.S.G. § 5K1.1, both
8  parties stipulate and agree that neither party will move for, or
9  argue in support of, any departure from the sentencing guidelines.
10 Furthermore, neither party will seek any deviance or variance from
11 the Sentencing Guidelines under 18 U.S.C. § 3553(a), United States
12 v. Booker and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738
13 (2005). If either party breaches this provision, the other party
14 shall be relieved of all its obligations under this plea agreement.

15 **C. Specific Sentence Agreement Under Rule 11(c)(1)(C):**
16 Pursuant to Rule 11(c)(1)(C), the parties specifically agree that a
17 sentence of 24 months, at the low end of the applicable sentencing
18 guideline range, is the appropriate sentence in this case, prior to
19 any motion by the government under U.S.S.G. § 5K1.1 for a reduction
20 in sentence to reflect the defendant's substantial assistance.

21      If the Court decides that a sentence of more than 24 months is
22 appropriate for the defendant, the defendant has the right to
23 withdraw his guilty plea and proceed without the benefits of this
24 agreement. If the Court rejects the plea agreement, it shall advise
25 the defendant of that fact, allow the defendant the opportunity to
26 withdraw his plea, and advise him that if he persists in a guilty
27 plea the disposition of the case may be less favorable to him than
28 is contemplated by this agreement.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be

dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

/ / / /
/ / / /
/ / / /

# IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 1/26/09

Charles W. Blau
CHARLES W. BLAU
SARAH Q. WIRSKYE
Attorneys for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 1/26/09

James Richard Wahl, Jr.
JAMES RICHARD WAHL, JR.,
Defendant

/ / / /

/ / / /

/ / / /

13

**C. Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

DATED: 1/26/09

LAWRENCE G. BROWN
Acting United States Attorney

By: *Sean C. Flynn*
BENJAMIN B. WAGNER
SEAN C. FLYNN
Assistant U.S. Attorneys

**EXHIBIT "A"**
**Factual Basis for Plea**

At trial, the government would prove the following facts beyond a reasonable doubt:

From at least 1998 until April 2008, defendant JAMES RICHARD WAHL, JR. ("Wahl") served in various positions, to include Senior Group Manager for Ingredients Purchasing, for Frito-Lay, Inc. ("Frito-Lay"), a multinational food company with a principal place of business and headquarters in Plano, Texas. In that capacity, Wahl was vested with authority to negotiate and enter into contracts, with the approval of his employer, for the purchase of processed tomato products and other food products from various processors. In the normal course, Frito-Lay and Wahl received bids for the sale of processed tomato and other food products from processors to Frito-Lay by way of what was intended to be a competitive bidding process. In performing these functions, Wahl owed Frito-Lay a duty of honest services.

One company which routinely sold processed tomato products and other food products to Frito-Lay was SK Foods, L.P., a limited partnership with principal places of business in Monterey, California, and in Williams, Ripon and Lemoore, California, in the Eastern District of California. SK Foods, L.P. and its related corporate entities ("SK Foods") is a grower and processor of tomato products and other food products, for sale to food product manufacturers, food service distributors and marketers, and retail outlets. In negotiating and entering into contracts between Frito-Lay and SK Foods, Wahl routinely dealt with Randall Rahal, a supervisor and Director of SK Foods, who also served as an SK Foods sales broker through his New Jersey-based food service company Intramark USA, Inc. ("Intramark").

As part of a scheme to defraud Frito-Lay of its right to Wahl's honest services, beginning in 1998 Wahl began receiving personal bribe payments from Rahal, on behalf of SK Foods. Between 1998 and April 2008, Rahal paid Wahl approximately $160,000 in bribes on behalf of SK Foods. In return for the personal bribe payments, Wahl agreed to, and did, ensure that Frito-Lay purchased processed tomato products and other products from SK Foods rather than from certain of SK Foods' competitors. In addition, in return for the bribe payments, Wahl provided SK Foods with information that allowed SK Foods to sell certain food products to Frito-Lay at inflated prices.

Rahal's bribe payments to Wahl were made with the knowledge and encouragement of other leaders and employees at SK Foods. For example, in the Spring of 2006, Wahl met with a senior leader of SK Foods in Plano, Texas to discuss certain business arrangements between Frito-Lay and SK Foods. During their meeting, the senior leader of SK Foods inquired into whether Wahl was satisfied with the value of payments Wahl had received from Rahal to that point.

One such payment occurred on or about September 7, 2006. On that date, Wahl accepted from Rahal a check in the amount of $4,000,

15

which was drawn on Intramark's Sun National Bank account number XXXXXX5624. Wahl received the check in Dallas, Texas, via United States mail. On March 26, 2008, Wahl subsequently accepted from Rahal a second check in the amount of $5,722.94, which was drawn on Intramark's Sun National Bank account number XXXXXX5624. Wahl received the check in Dallas, Texas, via United Parcel Service.

In return for Rahal and SK Foods' personal bribery payments, between 1998 and 2008 Wahl secured contracts between SK Foods and Frito-Lay for the sale of certain food products at elevated prices, causing a substantial loss to Frito-Lay.

Wahl, Rahal and SK Foods' actions were in direct contravention of the conflict of interest policies set forth in the Frito-Lay Code of Conduct, and were intended to, and did deprive Frito-Lay of its right to Wahl's honest services. Such conduct violated 18 U.S.C. §§ 1341 and 1346, and TEX. PENAL CODE § 32.43.